UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

UNITED STATES OF AMERICA,         :

                                  :

        v.                        :

                                  :     **MEMORANDUM & ORDER**

AKHROR SAIDAKHMETOV,        :     15-CR-0095 (WFK)

                                  :

                Defendant.     :

---------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 19, 2017, the defendant, Akhror Saidakhmetov, pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1). The Court now sentences the defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, the defendant is hereby sentenced to 180 months of incarceration, and payment of a $100.00 special assessment.

## BACKGROUND

On February 24, 2015, the United States filed a Complaint against Akhror Saidakhmetov ("Defendant") and two co-defendants, alleging they had conspired to provide material support to a foreign terrorist organization, to wit the Islamic State of Iraq and the Levant ("ISIL"). ECF No. 1. The Government subsequently indicted Defendant and his co-defendants on March 9, 2015, ECF No. 14, and thereafter filed three Superseding Indictments on April 6, 2015, June 8, 2015, and May 9, 2016, respectively, ECF Nos. 28, 63, 135. On January 19, 2017, Defendant pleaded guilty to the first count of the Third Superseding Indictment (S-3), which alleged one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1). The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

## I.  Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case.  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

## II.  Analysis

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

Defendant was born on June 26, 1995, in Turkestan, Kazakhstan, and lived with both of his parents until he was about four years old, when his mother filed for divorce.  *See* Presentence Investigation Report ("PSR") ¶¶ 46, 48, ECF No. 211; Def.'s Sentencing Mem. ("Def.'s Mem.") at 3-4, ECF No. 234.  Defendant's father is reported to have been an alcoholic who abused his wife; after the divorce, he effectively abandoned his son.  PSR ¶ 46; Def.'s Mem. at 3-4.  Defendant and his mother thereafter moved to live with extended family in an agricultural

community in Chernyak, Kazakhstan. PSR ¶ 48; Def.'s Mem. at 4. During Defendant's early youth, Defendant's mother would often leave him with his aunt and uncle for extended periods while she sought work in other regions and other countries. Def.'s Mem. at 7-8. At other times, Defendant moved to live with his mother when she found a new job, but would often be left alone in their apartment for much of the day. *Id.* at 8.

Defendant's mother immigrated to the United States in 2010. PSR ¶ 48. Defendant lived with his aunt and uncle in Tashkent, Uzbekistan, until June 2012, when he joined his mother in the United States. *Id.* Defendant and his mother lived in the Brighton Beach neighborhood of Brooklyn, New York, and Defendant began attending high school at James Madison High School. PSR ¶¶ 48, 56; Def.'s Mem. at 11-12. Defendant subsequently transferred to Abraham Lincoln High School and later left to school to pursue his G.E.D., as he had struggled to acclimate to school in America. *See* PSR ¶ 56; Def.'s Mem. at 11-12. In October 2014, Defendant began working at a cellphone repair business owned by co-defendant Abror Habibov; during the course of his employment by Habibov, Defendant worked in cellphone repair kiosks in, among other places, Savannah, Georgia; Philadelphia, Pennsylvania; and Dover, Delaware. PSR ¶¶ 48, 56. It was during his rocky transition to the United States that Defendant became friends with co-defendant Abdurasul Juraboev and began to seek out Islamic teachings on the internet. Def.'s Mem. at 11-13. Defendant and Juraboev later became roommates after Defendant's mother moved out of the apartment she had shared with her some; at some point, the two also lived with a confidential informant who was working with the Federal Bureau of Investigation ("FBI"). PSR ¶ 48; Def.'s Mem. at 17-18.

In August 2014, agents of the FBI's Joint Terrorism Task Force discovered a post on the Uzbek language social media site www.hilofatnews.com in which an individual, later determined

to be Juraboev, expressed support for ISIL, which has been designated a Foreign Terrorist Organization by the State Department. *Id.* ¶¶ 4, 7. In the same post, Juraboev expressed a desire to be a martyr for ISIL and threatened to kill the President of the United States. *Id.* ¶ 7. After determining that he was the author of the posts, FBI agents interviewed Juraboev twice; during both interviews, Juraboev admitted to having written the posts and reiterated his support for ISIL. *Id.* He also indicated Defendant supported ISIL as well. *Id.*

After interviewing Juraboev, FBI agents began a larger investigation into the activities of Defendant, Juraboev, and their associates, which continued for approximately six months. *Id.* ¶¶ 8-9. The FBI found that Defendant had been in contact with ISIL operatives and supporters, including Defendant's employer, Habibov, who had encouraged Defendant to travel to Syria to fight for ISIL. *Id.* The FBI also intercepted several phone conversations between Juraboev and Defendant, in which Defendant expressed a desire to join the United States military to act as a spy for ISIL. *Id.* ¶ 12.

Defendant and Juraboev thereafter took steps to follow through on their plan to join ISIL, much of which they communicated to a confidential informant who had befriended them at the direction of the FBI. *Id.* ¶¶ 13-14. On December 29, 2014, Juraboev purchased tickets to travel to Istanbul, Turkey, on a flight departing on March 29, 2015. *Id.* ¶¶ 15-16. He told the confidential informant he intended to travel from Turkey to Syria, and that in the event he was questioned about his travel plans, he would show officials his return ticket from Turkey and/or claim he was traveling to Uzbekistan to diffuse suspicion. *Id.* Defendant also confided in the confidential informant that he hoped to travel to Syria, but said that his mother had taken his passport in order to prevent him from traveling to undertake a jihad. *Id.* ¶ 17. The confidential informant thereafter assisted Defendant in getting new travel documents and, once the

documents had arrived, Habibov provided Defendant with the funds to pay for airfare to Turkey. *Id.* ¶¶ 17-20. Defendant was arrested on February 25, 2015, at John F. Kennedy International Airport in Queens, New York, after attempting to travel to Turkey. *Id.* ¶ 22.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal laws intended to deter terrorism, both foreign and domestic, and is crafted to deter him and others from making similar efforts to support and promote foreign terrorist organizations in the future. The Court's sentence also takes into account Defendant's youth, isolation, and subsequent expressions of remorse as well as the role of the FBI's confidential informant in encouraging Defendant's conduct.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), for which he faces a maximum term of imprisonment of fifteen years. *See* 18 U.S.C. § 2339B(a)(1). Defendant also faces a term of supervised release of up to life, *see* 18 U.S.C. § 3583(b)(2), (j); a term of probation of between one and five years, with one of the following special conditions imposed, unless extraordinary circumstances exist: a fine, restitution, or community service, *id.* §§

3561(c)(1), 3563(a)(2); a maximum fine of $250,000.00, *see id.* § 3571(a); and a mandatory special assessment of $100.00, *see id.* § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

U.S. Sentencing Guidelines § 2M5.3 applies to 18 U.S.C. § 2339B(a)(1) offenses and provides a base offense level of twenty-six. *See* U.S. Sentencing Commission, *Guidelines Manual*, § 2M5.3 (Nov. 2016) ("USSG" or "Guidelines"). Because the offense involved the provision of material support or resources with the intent, knowledge, or reason to believe they would be used to commit or assist in the commission of a violent act, two levels are added. *Id.* § 2M5.3(b)(1)(E). An additional twelve levels are added because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism. *Id.* § 3A1.4(a). Defendant's acceptance of responsibility by pleading guilty and his timely notification of his intent to do so permit a reduction of three levels. *Id.* § 3E1.1. Accordingly, Defendant's total adjusted offense level is thirty-seven. Because Defendant has no convictions that result in criminal history points, he has a criminal history score of zero, which would result in a criminal history category of one. PSR ¶ 41; USSG ch. 5, pt. A. Because the instant offense involved, or was intended to promote, a federal crime of terrorism, however, Defendant's criminal history category is automatically six. *Id.* § 3A1.4(b).

Given a total offense level of thirty-seven and a criminal history category six, the Guidelines suggest a term of imprisonment of three hundred sixty months to life. *Id.* at ch. 5, pt. A. However, the statutory maximum restricts the Guidelines term of imprisonment to one

hundred eighty months. *Id.* § 5G1.1(a). The Guidelines further recommend a term of supervised release of between one year and life, *id.* § 5D1.2(a)(2), (b); a fine of between $20,000.00 and $200,000.00, *id.* § 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines suggest Defendant is ineligible for probation. *Id.* § 5B1.1(b)(3).

### E. Pertinent Policy Statement of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not relevant to Defendant's sentencing.

### CONCLUSION

A sentence of 180 months of incarceration, and payment of the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court expressly adopts the factual findings of the Presentence Investigation Report.

**SO ORDERED.**

s/WFK

_____

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 20, 2017
      Brooklyn, New York